**In re ORMAND BEACH ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Citation Mortgage, Limited, Citation Mortgage Corporation and Terrence Russell, Appellants,**

v.

**Ormand Beach Associates Limited Partnership, Appellee.**

No. 3:00–CV–2111(JBA).
Bankruptcy No. 94–21524.

United States District Court,
D. Connecticut.

May 24, 2002.

Robert A. White, Robert E. Kaelin, Murtha Cullina LLP, Hartford, CT, for appellant.

Ira H. Goldman, Shipman & Goodwin, Hartford, CT, Leighton Aiken, Dana M. Campbell, Owens, Clary & Aiken, Dallas, TX, for appellee.

Patricia Beary, U.S. Trustee Office, New Haven, CT, trustee.

ARTERTON, District Judge.

This is an appeal from the United States Bankruptcy Court for the District of Connecticut of a final order imposing $73,463.45 in sanctions against appellants. For the reasons set out below, the Court reverses the Bankruptcy Court's imposition of sanctions.

I. *Factual Background*

A. *Events Giving Rise to the Sanctions*

Citation Mortgage Co. ("Citation") held a mortgage on the Ormand Beach Retirement Center and the rents from the center, based on an assignment of rents under Florida law. The center was owned and operated by the Ormand Beach Associates Limited Partnership ("Ormand Beach") and its general partners, LPIMC, Inc., Eugene Rosen, John Galston and Bruce Weinstein (collectively, "General Partners").

In 1992, Citation instituted a foreclosure action against the center in Florida state court. As part of the foreclosure proceeding, the Florida court ordered an accounting and entered a deposit order. After the Florida court found that Ormand Beach and LPIMC "willful[ly] and flagrant[ly]" refused to comply with the order, the court imposed a fine of $10,000 per day, payable to Volusia County, until a proper accounting was filed. App. II–6–C. A one-page accounting was thereafter filed, but this was unacceptable to the court, which entered another contempt citation against Ormand Beach and LPIMC.

While the foreclosure was pending and the contempt citations were still extant, Ormand Beach filed for bankruptcy protection in the District of Connecticut. The bankruptcy filing stayed any further proceedings in Florida against Ormand Beach, by virtue of the Bankruptcy Code's automatic stay provisions. Citation asked the Bankruptcy Court to modify the stay so it could continue the foreclosure action. Ormand Beach asked the Bankruptcy Court to enlarge the stay to include the General Partners within its purview. In support of its modification request, Citation expressly stated that it "does not seek relief from the stay . . . to continue contempt proceedings against the Debtor." App. II–5–5. At the Bankruptcy Court's hearing on the motions, Citation's counsel, Robert White, assured the Bankruptcy Court that if the stay were lifted, Citation would not pursue contempt sanctions against the debtor, Ormand Beach, but that such sanctions would be pursued against the General Partners:

> [T]he first thing that we would like to have happen to move this case along is the completion of the rent entitlement hearing, which under the statute, involved completion of the accounting. The judge is going to deal with contempt issues as to the general partners. We have said to the court we are not going to pursue contempt sanctions against the debtor, even though there may not be any jurisdiction for the court to prevent the state court down there from [im]posing a fine for pre-petition contempt, certainly nothing further. We will as to the general partners.

App. II–5–4 at 99.

The Bankruptcy Court granted Citation's motion for modification of the stay to allow continuation of the Florida foreclosure action, and denied Ormand Beach's request to bring the General Partners within the stay's purview. The court's order made no reference to the pursuit of sanctions.

Thereafter, Citation informed the Florida court by letter that Citation would pursue sanctions against the General Partners. The defendants in the foreclosure action, which included Ormand Beach, responded with a letter to the Florida court that asserted the three individual General Partners were not subject to contempt sanctions, and requested a status conference. At the conference, the defendants (both Ormand Beach and the General Partners, represented by one attorney) requested that the Florida court deem the contempt purged by virtue of a supplemental accounting that had been previously filed. Critically, counsel for Ormand Beach proposed the following language for an order setting the agenda for the hearing, language that was in fact included in the order issued by the Florida state judge: the hearing was to be a "[c]ontinuation of the hearing of April 25, 1994 on motion for contempt, including consideration of whether the supplemental accounting filed subsequent to that hearing purges the *Defendants* of contempt . . ." App. II–6–F at 6 (emphasis added). By use of the undifferentiated plural "defendants," the order made no distinction between Or-

mand Beach and the General Partners. The order signaled, instead, that the topic of discussion would be whether the supplemental accounting was sufficient, rather than a more focused discussion regarding which parties were still subject to sanctions given the intervening bankruptcy filing.

At the hearing announced in the above order, the following colloquy took place:

The Court: Has the stay been unconditionally lifted?

Mr. Russell: It has.

Mr. Campbell: Your Honor, I have to object to that. I have a copy of the order. It's very specific, the stay has not been lifted. The stay has been modified so as to allow effectively a liquidation of the claims in this Court. However, that order lifting the stay is very specific . . . .

Mr. Russell: That's accurate.

Mr. Campbell: So the stay is not unconditionally lifted. I want to be very clear on that, because I think it impacts very seriously what we can do here today.

Mr. Russell: I was interrupted, Your Honor. The stay has been unconditionally lifted insofar as the contempt sanctions. It's very specific in respect to that. It has not been lifted with respect to the creation of a security interest by the plaintiff [in] the funds, but that court specifically referred to this Court to ascertain the amount due.

App. II–6–H at 18–19.

At a later point in that same hearing, Russell spoke directly on the issue of which entities would actually have to pay the liquidated contempt fine:

And while [the contempt fine] cannot be paid by the Debtor because they have run up to Connecticut and filed bank-

ruptcy as far away from here as they could possibly get, there are other Respondents to that Order . . . . The general partners [are not in bankruptcy]. They are subject to that Order, and that Order has not been complied with, and they have no explanation.

App. II–5–10 at 239.

The Florida court liquidated the fine, which was to be paid to Volusia County rather than any party at issue here, at $2.4 million. Russell submitted a proposed order including all five defendants as liable for the fine, but added that Ormand Beach would only be "subject insofar as may be required by law, to the jurisdiction of the bankruptcy court." The Florida court rejected Russell's caveat, and the order was issued without differentiating among defendants.

### B. *Sanctions Proceedings*

The Bankruptcy Court ruled that the automatic stay had been violated by the Florida court's order, vacated the Florida court's liquidation of the fine, and imposed $73,462.45 in sanctions against Russell and Citation for pursuing the contempt citation. The Bankruptcy Court based its sanction on its authority to enforce the automatic stay.

This Court reversed the Bankruptcy Court's ruling regarding violation of the automatic stay and reinstated the Florida court's liquidation order, holding that the Florida court's two contempt orders and its liquidation order had been entered to uphold the dignity of the Florida court, and that no violation of the automatic stay had occurred. Ruling on Bankruptcy Appeal [Doc. # 27], *Citation Mortgage v. Ormand Beach Assoc.*, 3:95cv1528 (JBA) (June 16, 1997).[1] Subsequently, the Flori-

---

1. As part of its ruling, this Court also vacated the sanction order based on violation of the

da court vacated the contempt orders as to all defendants. The bankruptcy concluded, the reorganization plan was confirmed, all creditors were paid their entire claims, and Ormand Beach's sole remaining asset was sold.

The Bankruptcy Court once again took up the issue of sanctions, however, and found that Russell had made "reckless, material and deliberate misrepresentations to the Florida State Court, and his and Citation's subsequent refusal to correct such misrepresentations exemplify the type of bad faith conduct sanctionable under the court's inherent power." Memorandum of Decision, September 20, 2000 at 11. While the prior sanctions had been based on the Bankruptcy Court's power to enforce the automatic stay, this time the Bankruptcy Court imposed sanctions based on its inherent power and 28 U.S.C. § 1927.

Citation and Russell thereafter instituted this appeal.

## II. *Standard of Review*

■■■ The Bankruptcy Court's decision to impose sanctions is reviewed for abuse of discretion. *In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir.2000). A court abuses or exceeds the discretion accorded it when its decision rests on an error of law, such as the application of the wrong legal principle, or its decision—while not necessarily the product of a legal error or a clearly erroneous fact finding—cannot be located within the range of possible decisions. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001). The Second Circuit's sanctions "[j]urisprudence cautions, however, that 'this . . .

standard is not as simple as it may appear,' and that 'although the decision to impose sanctions is uniquely in the province of the bankruptcy court, [the reviewing court] nevertheless need[s] to ensure that any such decision is made with restraint and discretion.'" *In re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002) (*quoting Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333–34 (2d Cir.1999)).

■■■ This Court reviews the Bankruptcy Court's findings of fact for clear error. *Bayshore Wire Products*, 209 F.3d at 103. A factual finding is clearly erroneous when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Zervos*, 252 F.3d at 169 (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). If the lower court's account of the evidence is " 'plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighted the evidence differently.'" *Id.* at 169 (*quoting Anderson v. City of Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (*quoting Anderson*, 470 U.S. at 573–574, 105 S.Ct. 1504).

## III. *Analysis*

The underlying bankruptcy that gave rise to these proceedings has long been

---

automatic stay, in light of the fact that the automatic stay had not been violated, but noted that "[t]he record here demonstrates a course of apparent dissemblances that the bankruptcy court would be well within its authority to sanction, notwithstanding the for-

tuity of this Court's conclusion on the nature of the contempt proceedings." *Id.* at 17. This Court made no findings in that regard, however, and remanded the matter to the Bankruptcy Court for its determination.

concluded, and this Court has already determined that the contempt sanctions imposed by the Florida state court against Ormand Beach were not a violation of the automatic stay provisions of the Bankruptcy Code. In addition, the contempt sanctions imposed were subsequently vacated by a Florida appellate court, and are thus not extant. The only question presented here is whether appellants committed sanctionable conduct in the Bankruptcy Court by pursuing sanctions against Ormand Beach (as opposed to against the General Partners) in state court even though the Bankruptcy Court had been assured that such sanctions would not be pursued against the debtor, Ormand Beach. It is undisputed that appellants had the right to pursue sanctions against the General Partners, who were not in bankruptcy and whose motion to be included in the automatic stay was denied by the Bankruptcy Court, and that any sanctions imposed would have been paid to Volusia County rather than to appellants, Citation and Russell.

 The Bankruptcy Court imposed sanctions on Russell and Citation by virtue of its inherent authority to regulate the course of litigation before it, and against Russell under 28 U.S.C. § 1927.[2] While the Bankruptcy Court relied on both sources of authority to assess sanctions, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards made under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."

*Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986).

 Because the sanctions imposed by the Bankruptcy Court relate to the conduct of the litigation and were taken on behalf of the client, an explicit finding of bad faith is required. *United States v. Seltzer,* 227 F.3d 36, 41–42 (2d Cir.2000). Such a finding of bad faith "requires both 'clear evidence that the challenged actions are without color, and are taken for reasons of harassment or delay or for other improper purposes, and a high degree of specificity in the factual findings of the lower [court].'" *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 78 (2d Cir.2000) (*quoting Oliveri,* 803 F.2d at 1272) (emphasis deleted). "A claim is colorable 'when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Revson,* 221 F.3d at 79 (*quoting Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980)).

 The Court can discern no sufficient basis for a finding of bad faith on this record. While there certainly is a basis for concluding that Russell's statement to the Florida court that the automatic stay had been unconditionally lifted with respect to the sanctions order was incorrect as a factual matter, the undisputed record shows that Citation and Russell repeatedly informed the Florida state court that no sanctions could be imposed against Ormand Beach. First, Russell told the Florida court during the same hearing that "the contempt fine cannot be pursued [against Ormand Beach] because they have run up to Connecticut and filed bankruptcy." Second, Citation proposed a caveat to the order liquidating sanctions providing that

---

**2.** "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreason-ably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

any sanctions order against Ormand Beach would be "subject insofar as may be required by law to the jurisdiction of the Bankruptcy Court." This second caveat was proposed by Russell even though the proposed order submitted by Ormand Beach's counsel (who would be expected to be the most vigilant in this regard) contained no such limitation.

The actions taken by Russell and Citation, including these specific limitations on the effect of any liquidation of sanctions by the Florida court, show that Russell and Citation were not purposefully "pursuing" sanctions against Ormand Beach in violation of the representation made to the Bankruptcy Court. Russell's statement that the stay had been lifted with respect to sanctions is untrue, but given his clarification during the same proceeding that Ormand Beach was insulated from any award of sanctions by virtue of the Connecticut bankruptcy proceeding, such misstatement does not meet the standard for bad faith.

The focus of the hearing at which the misstatement was uttered was whether the supplemental accounting purged the contempt, which all parties concede could still be collected against the General Partners. The distinction between Ormand Beach as protected debtor and the General Partners as potentially liable parties arises only from the Connecticut bankruptcy proceeding. Because the hearing was focused on the sufficiency of the accounting (which requires no distinction between parties), Russell's misstatement to the Florida state court that the stay was "unconditionally lifted" versus "modified" to permit liquidation of claims, would not have affected whether the contempt proceeding went forward or the subject of discussion (i.e., the sufficiency of the accounting) was discussed. The issue of the General Partners' liability for contempt sanctions (a topic Citation and Russell were expressly authorized to pursue) was inextricably intertwined with the sufficiency of the supplemental accounting; it would have been impossible for Citation to pursue sanctions against the General Partners without some reference to the earlier proceedings or to the sufficiency of the accounting filed on behalf of both Ormand Beach and the General Partners. Thus, once this misstatement is coupled with later explanations to the Florida court that no sanctions order would be effective against Ormand Beach in light of the Connecticut bankruptcy proceeding, it becomes evident that this misstatement cannot suffice for a finding of bad faith or improper motive on this record.

A further basis for the sanctions imposed by the Bankruptcy Court was Russell's submission of a proposed order indicating that the contempt sanctions had been "liquidated" and listing those liable for the liquidated fines as both Ormand Beach and the General Partners. While it is not clear that "liquidating" a fine amounts to "pursuing" sanctions in violation of the Bankruptcy Court's order, it is nonetheless evident from the record, as set out above, that both Russell and Citation repeatedly advised the Florida court that any sanctions against Ormand Beach would be expressly subject to the Bankruptcy Court and the Bankruptcy Code. Thus, it is not clearly evident that Russell and Citation acted with the improper purpose of collecting sanctions against Ormand Beach without the authorization of the Bankruptcy Court, particularly since throughout the Florida state court proceedings, both sides referred interchangeably to "defendants," without differentiating between Ormand Beach and the General Partners.

The Court's conclusion that there is insufficient evidence to support a finding of

bad faith is further supported by the fact that the record discloses no motive for appellants' pursuit of sanctions against Ormand Beach. First, any sanctions against Ormand Beach were to inure to the benefit of Volusia County, not Citation. Not only would an effort to enforce sanctions have not directly benefitted Citation, it would actually have harmed Citation, as money paid by the Ormand Beach bankruptcy estate to Volusia County would concomitantly reduce the pool of money available to pay claims of Citation as a creditor of the bankruptcy estate. Second, since Citation had expressly represented to the Bankruptcy Court that no such sanctions would be pursued against Ormand Beach, appellants would have to have been, at a minimum, totally foolhardy to expressly represent that no sanctions would be pursued, and then shortly thereafter wilfully engage in a full-scale attempt to collect such sanctions. It would be evident to any attorney that such a brazen course of conduct, in addition to being dishonest, would be easily detectible and sanctionable by the Bankruptcy Court. The record does not support with the requisite clarity that appellants' conduct was without color and taken for improper purpose; rather, it shows a carelessness and failure of attention to punctiliously insure that their conduct in Florida matched their representations in Connecticut.[3]

## IV. Conclusion

For the reasons set out above, the judgment of the Bankruptcy Court imposing sanctions in the amount of $73,463.45 against Citation Mortgage, Ltd., Citation Mortgage Corp. and Terrence Russell is REVERSED and the order imposing those sanctions is VACATED.

IT IS SO ORDERED.

---

**3.** While the Court's earlier opinion noted the presence of *"apparent* dissemblences" [doc. # 27] in 3:95cv1528(JBA) at 17 (emphasis added), a review of the full record of the context and sequence of Russell's statements persuades the Court that there is insufficient basis for concluding that Russell's misstatements were actually made in bad faith.