10-0984-bk

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand ten.

PRESENT:   DEBRA ANN LIVINGSTON,
                    DENNY CHIN,
                                *Circuit Judges*,
                    DAVID G. LARIMER,
                                *District Judge*.[*]

_____

IN RE JAMES M. LAVENDER,
          *Debtor.*

_____

JAMES M. LAVENDER,
          *Debtor-Appellant*,

     -v.-                                        No. 10-0984-bk

MANHEIM'S PENNSYLVANIA AUCTION SERVICES, INC., MANHEIM AUTOMOTIVE
FINANCIAL SERVICES, INC.,
          *Creditors-Appellees.*

_____

                              Jeffrey Herzberg, Zinker & Herzberg, LLP, Smithtown, NY, *for
                              Debtor-Appellant*.

---

[*]The Honorable David G. Larimer, of the United States District Court for the Western District of New York, sitting by designation.

Daniel C. Ross, Keegan & Keegan, Ross & Rosner, LLP, Mattituck, NY, *for Creditors-Appellees*.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED.

Debtor-Appellant James M. Lavender appeals from a judgment of the Eastern District of New York (Seybert, *J.*), denying his appeal from an order of the United States Bankruptcy Court (Trust, *J.*) that found the debt owed to Creditors Manheim's Pennsylvania Auction Services, Inc. and Manheim Automotive Financial Services, Inc. ("Manheim") to be nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(B). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"As an order of the district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review, we 'independently review the factual determinations and legal conclusions of the bankruptcy court.'" *In re Jackson*, 593 F.3d 171, 176 (2d Cir. 2010) (citation omitted) (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)). We review the Bankruptcy Court's factual findings for clear error and review *de novo* its conclusions of law. *Id*. This Court also engages in *de novo* review of a grant or denial of summary judgment, "viewing the record in the light most favorable to the party against whom summary judgment is sought." *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010). Under Federal Rule of Civil Procedure 56(c), "the district court must consider all 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,' in determining whether there is a genuine issue of material fact." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)); *see also* Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy).

2

We review the Bankruptcy Court's decision regarding sanctions for abuse of discretion. *See In re Highgate Equities, Ltd.*, 279 F.3d 148, 151 (2d Cir. 2002). Recognizing that "the [bankruptcy] court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted," we are nevertheless "mindful that a [bankruptcy] court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 152 (alterations in original) (internal quotation marks omitted) (quoting *Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir. 1995)); *see also In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010).

Debtor first appeals the Bankruptcy Court's denial of his motion for summary judgment in a hearing held on March 28, 2007. He claims that because the Bankruptcy Court refused to consider Creditors' opposition to his motion for summary judgment, there was no evidence establishing a disputed question of material fact with respect to the issue of whether Manheim reasonably relied on a financial statement Lavender was alleged to have submitted in 1998.[1] Because reasonable reliance must be demonstrated by a creditor to establish that a debt owed to it is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(B), Debtor argued that, given the alleged absence of disputed fact on this point, he was entitled to summary judgment on Creditors' claim.

As an initial matter, the record does not reflect that the Bankruptcy Court in fact expressly refused to consider Creditors' papers in opposition. Even if it had, Debtor's motion for summary

---

[1]Debtor also claims that at the time the motion for summary judgment was decided, there were no question of fact with regards to whether he had published the disputed financial statement, something he denied in his motion. As the District Court recognized, however, the financial statement in question contains what appears to be Lavender's signature and thus its "plain face . . . indicates that [Debtor] published it." *Lavender v. Manheim's Pa. Auction Servs., Inc.*, No. 09-CV-1726 (JS), slip op. at 6 (E.D.N.Y. March 9, 2010).

judgment does not establish an absence of any genuine question of material fact such that he would have been entitled to summary judgment in the first place. Manheim, in its response to Debtor's interrogatories, had indicated that it intended to call Robert Slade as a witness at trial, who would testify that Manheim Automotive Financial Services relies on the information provided by debtors in such financial statements in general and did so specifically in this case. In disputing this contention, Debtor highlighted the absence of any evidence regarding Manheim's efforts to verify or analyze the financial information Lavender provided, other than in consulting a credit reporting agency, and argued that Manheim was already obligated to increase the credit limit under the terms of a promissory note signed in 1997, that there was no indication that the loan was being reworked, and that Manheim had not been concerned with previous breaches by the Debtor of the existing credit limit, such that it could not claim to be truly concerned with the maximum limitations set out in the promissory notes.

None of these contentions establish that there was no question of material fact with regard to whether Creditors relied on the financial statement in granting Debtor not just an increase in his line of credit but also an "extension, renewal or refinancing" of his existing line of credit, as indeed the Bankruptcy Court ultimately found was the case here. The conclusion that credit was renewed or extended could be drawn, as the Bankruptcy Court noted, from the similarity in terms between the promissory notes executed by Debtor in 1994 and 1998, both of which were included in Debtor's motion for summary judgment. Moreover, while Creditors did not demonstrate in opposing this motion for summary judgment that they had conducted perfect due diligence, this fact alone did not remove any question of fact with respect to the reasonableness of their reliance, particularly given the admitted length of their relationship with Lavender at the time he allegedly submitted the financial statement in 1998. Thus, even without considering the evidence produced in Creditors'

4

motion opposing summary judgment, there was still a genuine question of material fact as to reasonable reliance, and the Bankruptcy Court properly denied Debtor's motion for summary judgment.

Debtor further contends that sanctions should have been granted by the Bankruptcy Court based on the untimely filing of Creditors' opposition to his motion for summary judgment, their untimely disclosure of an additional witness and additional documents, the failure to file an initial disclosure statement as required by Rule 7026 of the Federal Rules of Bankruptcy Procedure, and their failure to answer interrogatories under oath or have them signed by the person making them. He asserts that these purported failures entitled him to sanctions under Rules 7033 and 7037 of the Federal Rules of Bankruptcy Procedure, which make Rules 33 and 37 of the Federal Rules of Civil Procedure applicable in adversary proceedings in bankruptcy.

With respect to Rule 37, governing the alleged discovery abuses, in considering a decision to exclude evidence under this rule, we have identified as relevant factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d. Cir. 2006) (alterations in original) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)).[2] The Bankruptcy Court was well within its discretion not to impose sanctions in this case. Debtor cites one case that

---

[2]Debtor suggests that the Bankruptcy Court was required under *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175 (2d Cir. 2008), to address these factors. However, the case does not so hold and indeed only requires that the Second Circuit "be informed by the record of why the district court acted as it did." *Id.* at 177. As reflected below, the record makes clear in this case that the Bankruptcy Court's decision was based on acceptance of Creditors' explanation for their tardiness and the lack of meaningful prejudice to Lavender.

remanded to the district court a decision to deny expenses under Rule 37, when the district judge stated in open court that he would award a party expenses in connection with the other party's failure to appear for a deposition, but then denied expenses without explanation. *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008). Even there, however, we noted that "[w]e have never held that Rule 37(b)(2) expenses are mandatory and need not do so here." *Id.* at 178. Here, as the District Court noted, Creditors' lawyer did offer an explanation for the failure to timely produce evidence, with respect to both the original failure to produce documents within the discovery period and producing additional documents and a witness in opposing the motion for summary judgment, an explanation that the Bankruptcy Court was free to credit. The judge also was free to find that any prejudice Debtor suffered here, for example, having to drive to the office of Creditors' lawyers to conduct discovery of documents at a time when not all the documents were available, was not substantial. Debtor was also able to depose the witness who was produced after the close of discovery and to file another motion for summary judgment after the new evidence had been disclosed. While the testimony and documents produced were certainly important, they were not produced, as in *Patterson*, a mere ten days before trial. *See* 440 F.3d at 118. Deciding not to issue sanctions for the alleged discovery violations was thus well within the Bankruptcy Court's discretion.

With respect to the claim that interrogatories were not signed, Debtor asserts that while Creditors' lawyer undertook to have the documents signed at the sanctions hearing, it was never in fact done. However, Debtor's motion for sanctions was denied without prejudice. To the extent he is complaining of a continued failure to comply that allegedly prejudiced him at trial, that argument is waived based on a failure to present it to the Bankruptcy Court. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). To the extent he is complaining only of the initial decision not

6

to issue sanctions, the lack of any meaningful prejudice clearly supported the judge's decision not to impose sanctions. As a result, there is no abuse of discretion with respect to the denial of any of the claims for sanctions.

Finally, Debtor challenges the Bankruptcy Court's finding at trial that Creditors reasonably relied on Debtor's 1998 financial statement to extend their financing plan with the Debtor and to increase his line of credit. This Circuit had held that:

> Although the reasonableness requirement of § 523(a)(2)(B)(iii) presents a low threshold . . . to meet, whether [a party] has met that threshold is a question of fact. . . . The reasonableness of reliance requires the fact finder to consider "the totality of the circumstances," and we recognize that the bankruptcy court is "most familiar" with this factual setting and has had the opportunity to judge the credibility of the witnesses.

*In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir. 1996) (quoting *Matter of Coston*, 991 F.2d 257, 261-62 (5th Cir. 1993)). Because of its factual nature, we review the district court's finding that there was actual reliance and that the reliance was reasonable for clear error.

With respect to actual reliance, the internal notes put into evidence by Creditor, referencing the property owned by Debtor in Long Island in justifying the decision to increase the credit limit, and the testimony from Michael Wynn, Manheim's Director of Operations in the fall of 1998, that he personally relied on Debtor's financial statement in extending credit easily suffice to establish that the Bankruptcy Court's finding was not clearly erroneous.

With respect to the reasonableness of that reliance, Lavender's primary argument is that the finding of reasonableness here was improper given the allegedly insufficient investigation by Creditors in light of certain "red flags" in the 1998 financial statement submitted by Debtor. However, no significant red flags were present. The only potential reasons for concern were the increases in Lavender's net worth from November 1996 to September 1998, from $936,000 to

7

$1,850,000. However, as the Bankruptcy Court expressly recognized, the change in overall net worth and the changes in individual categories of assets purportedly held by the Debtor were not inherently suspicious, particularly given Lavender's tax reports from 1996 and 1997 to which Creditors had access, indicating an adjusted gross income of over $400,000 in both years. Debtor also claims that Manheim's investigation of the claims made in the 1998 financial statement was generally insufficient. However, given the circumstances in this case, the Bankruptcy Court's finding that Creditors sufficiently investigated the statement so as to be able reasonably to rely on it was not clearly erroneous. At the time Manheim received the statement, it had a relationship with Lavender that had lasted for over four years. There is testimony that Manheim had satisfied itself that the Debtor's wife had given a personal guaranty for the loan and that it had a bank letter and proof of dealer's license from the Debtor, although the Bankruptcy Court was not able to determine whether Manheim verified Lavender's insurance. It had also obtained tax returns and a credit report from Lavender. In the face of this evidence, the Bankruptcy Court's finding that reliance was reasonable was not clear error.

The Appellant also argues that the extension of credit to $900,000 in 1998 was irrelevant, whether because the limit had already been raised to that level in 1997, because Manheim had indicated in the past that it was not overly concerned when Lavender's business exceeded its then $500,000 limit, or because the money that was eventually owed was less than the previous credit limit, such that the extension did not play a causal role in any loss to Creditors. As the District Court noted, however, the Bankruptcy Court specifically found there was actual and reasonable reliance on the 1998 financial statement not just in increasing Debtor's line of credit but also in extending or renewing the existing line of credit. This finding was not clearly erroneous, given the similarity in terms between the promissory note executed in 1994 and that executed between the parties in

1998 and the testimony from Wynn that the line of credit was reviewed on an annual basis. As a result, the Bankruptcy Court's finding that Manheim reasonably relied on the Debtor's 1998 financial statement both to renew the financing agreement and increase Debtor's line of credit was not clear error.

We have considered Debtor's other arguments on appeal and find that they are without merit or moot. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk